UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RAGNA TRIPLETT-FAZZONE,

    Plaintiff,

v.

    Case No. 2:12-CV-00331
    JUDGE EDMUND A. SARGUS, JR.
    Magistrate Judge Norah M. King

CITY OF COLUMBUS DIVISION OF
POLICE, *et al.*,

    Defendant.

## OPINION AND ORDER

Plaintiff, Ragna Triplett-Fazzone, brings this action against multiple Defendants alleging federal and state law claims. This matter is before the Court for consideration of Plaintiff's various Motions and filings. (*See* ECF Nos. 83, 90, 94, 96 101, 112.) At this time, the Court will also address the Motions for Summary Judgment of the remaining Defendants. (ECF Nos. 98–100.) For the reasons that follow:

- The Court **DENIES** Plaintiff's Motion for Reconsideration of the Court's April 19, 2013 Opinion and Order. (ECF No. 83.)

- The Court **OVERRULES** Plaintiff's Objections to the Magistrate Judge's May 16, 2013 Opinion and Order regarding discovery. (ECF Nos. 94, 96.)

- The Court **DENIES** Plaintiff's Motions to Plead Special Matters. (ECF Nos. 101, 112.)

- The Court **GRANTS** Defendants' Motions for Summary Judgment with regard to Plaintiff's remaining federal 42 U.S.C. § 1983 claims. (ECF Nos. 98–100).

- The Court **DECLINES** to exercise supplemental jurisdiction over the remaining state law claims and **DISMISSES** such claims without prejudice.

## I. BACKGROUND

### A. Factual History

Plaintiff, who is proceeding *pro se*, brings several claims stemming from an incident that occurred during the night of April 15, 2010 into the morning of April 16, 2010. Late in the night of April 15, 2010 arrived at the Sugar Bar in Columbus, Ohio. (Pl. Dep. 41, ECF No. 95-1.) At the Sugar Bar, Plaintiff was dancing and put down her purse. (*Id.* at 57–58.) Plaintiff testified that, while dancing, she eventually looked down and saw that her purse was gone. (*Id.* at 58.)

Plaintiff stated that she quickly went to the front door of the Sugar Bar in a state of hysteria. (*Id.* at 59.) She told the doorman, Defendant Josh Wycuff, that her purse had been stolen. (*Id.* at 62.) According to Plaintiff, Defendant Wycuff did nothing in response. (*Id.* at 66.) Plaintiff stated that once she realized that Defendant Wycuff was not going to help her, she held out her arms to prevent people from getting out of the bar. (Pl. Dep. 72.) Plaintiff testified that at this point a person started "mouthing off to [her]" and pushed her arms out of the way. (*Id.* at 71–72.) At some point during this time span, Plaintiff stated that Defendant Wycuff looked to another person and then pointed to her head. (*Id.* at 103, 105.)

Plaintiff stated that shortly thereafter her arms were yanked behind her back and she was placed under arrest. (*Id.* at 102, 105.) Plaintiff testified that she became very upset. (*Id.* at 81.) Police officers walked Plaintiff approximately twelve feet to a police cruiser. (*Id.* at 107.) Plaintiff described that once in the police cruiser she began screaming and yelling, calling the police officers "everything [she] could think of." (Pl. Dep. 112, 125.) Plaintiff admitted that while in the police cruiser she kicked the door and dislodged the window of the cruiser from its frame. (*Id.* at 134–35.)

2

Plaintiff averred that the police eventually "hog-tied" her and carried her from the police cruiser to a paddy wagon. (*Id.* at 136.) Plaintiff specifically testified that, when she was already handcuffed, the police officers placed her on her stomach and strapped her ankles together. (*Id.* at 139–40.) According to Plaintiff, the police officers then took a strap and tied her from her handcuffs and ankles. (*Id.* at 140.) Plaintiff stated that the police officers then used this strap to carry her. (*Id.* at 140.) She was unable to recall precisely when she was unstrapped.[1] (Pl. Dep. 151.)

## B. Procedural History

Plaintiff filed this action in April 2012. Within her original Complaint, Plaintiff named the City of Columbus (Division of Police), the Franklin County Sheriff's Department, the Sugar Bar, and Unknown Defendants. On August 30, 2012, Plaintiff filed her Amended Complaint adding Defendants Chris Corso, Michael Gallicchio, Brian Swanson, Josh Wycuff, Officer Brian Keefe, and Officer Daniel Hargus. Although Plaintiff's pleadings are somewhat unclear, she appears to bring claims for constitutional violations pursuant to 42 U.S.C. § 1983, including excessive force and false arrest. Plaintiff also brings state law claims—against at least some Defendants—for battery, infliction of emotional distress, defamation, and negligence.

Various Defendants moved to dismiss Plaintiffs' claims. On April 19, 2013, the Court issued an Opinion and Order on Defendants' Motions to Dismiss. The Court dismissed Plaintiff's claims against Defendants Corso, Gallicchio, Swanson, and the Franklin County Sheriff's Department for failure to state facially plausible claims. The Court also dismissed

---

[1] Plaintiff also brought claims based on the purported actions of an employee of the Franklin County Sheriff's Department during her incarceration. The Court has already dismissed the claims arising from these allegations.

3

Plaintiff's claims against Defendant Wycuff with the exception of Plaintiff's state law negligence claim. Finally, the Court dismissed state law claims against Officers Keefe and Hargus as untimely. On May 13, 2013, after affording Plaintiff the opportunity to supplement the record regarding relation back of the Amended Complaint, the Court dismissed Plaintiff's 42 U.S.C. § 1983 against Officers Keefe and Hargus as untimely.

Defendants Wycuff, the Sugar Bar, and the City of Columbus are the only remaining active Defendants in this case. These Defendants move for summary judgment as to all of Plaintiff's remaining claims.

## II. STANDARD[2]

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (internal quotations omitted). The burden then shifts to the nonmoving party who "must set forth

---

[2] The Court will only outline the relevant standard for summary judgment. The Court will address other pertinent standards within its analysis.

4

specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248.

Additionally, the Court recognizes that *pro se* filings are to be liberally construed. *Yagley v. Occupational Safety & Health Admin., U.S. Dep't of Labor*, 461 F. App'x 411, 414 (6th Cir. 2012).

### III. ANALYSIS

As detailed above, this matter is before the Court for consideration of Plaintiff's various Motions as well as Defendants' Motions for Summary Judgment. The Court will begin by addressing the issues that Plaintiff's Motions and other filings raise. The Court will then address Defendants' Motions for Summary Judgment with regard to Plaintiff's remaining 42 U.S.C. § 1983 claims. Finally, the Court will consider the exercise of supplemental jurisdiction.

#### A. Motion for Reconsideration

On May 3, 2013, Plaintiff moved for reconsideration of the Court's April 19, 2013 Opinion and Order dismissing various claims and Defendants. As this Court has recently provided:

> District courts have authority both under common law and [Federal Rule of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir.2004). However, a motion for reconsideration "is not designed to give an unhappy litigant an opportunity to relitigate matters

5

> already decided, nor is it a substitute for appeal." In addition, it cannot be used to raise new arguments. *Johnson v. Henderson*, 229 F.Supp.2d 793, 796 (N.D.Ohio 2002).
>
> Traditionally, courts will grant a motion for reconsideration only: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent manifest injustice." *Id.* (quoting *In re Continental Holdings, Inc.*, 170 B.R. 919, 933 (Bankr. N.D. Ohio 1994)).

*Francis v. Davis H. Elliot Const. Co., Inc.*, No. 3:12–cv–87, 2013 WL 3456740, at *1 (S.D. Ohio July 9, 2013).

Here, Plaintiff fails to provide a sufficient basis for reconsideration. Although Plaintiff requests reconsideration, she does not address—with any sort of detail—the Court's specific reasons for dismissing claims against the various Defendants. Plaintiff fails to identify any error of law. Nor has Plaintiff identified new information, or law, that justifies reconsideration. Upon review of Plaintiff's Motion, as well as the April 19, 2013 Opinion and Order, the Court finds no reason to deviate from its previous determinations. Accordingly, Plaintiff's Motion for Reconsideration is **DENIED**.

### B. Objections to the Magistrate Judge's May 16, 2013 Opinion and Order

On May 16, 2013, the Magistrate Judge issued an Opinion and Order denying Plaintiff's previous Motion to Extend the Discovery Completion Date. The Magistrate Judge concluded that Plaintiff failed to establish good cause for an extension of the pretrial schedule. Plaintiff subsequently submitted two filings criticizing the Magistrate Judge's determination and requesting further discovery. (*See* ECF No. 94, 96.) Although Plaintiff labels these filings as opposing summary judgment, in substance they appear to be Objections to the Magistrate Judge's discovery ruling.

6

Pursuant to Federal Rule of Civil Procedure 72(a), a party may object to the Magistrate Judge's determination on a nondispositive matter. The Court then " must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

The Court agrees with—and incorporates—the thorough analysis within the Magistrate Judge's May 16, 2013 Opinion and Order. On September 5, 2012, the Court set a discovery deadline of April 15, 2013. The Court's Preliminary Pretrial Order specifically advised that "the discovery completion date requires that discovery requests be sufficiently in advance to permit timely response by that date." (ECF No. 12.) Despite this caution, Plaintiff apparently waited until April 2013 to submit discovery requests and until April 11, 2013 to move for a discovery extension. Although the Court is sympathetic to Plaintiff's *pro se* status, she is not excused from standard case management deadlines. The Court agrees with the Magistrate Judge that Plaintiff has failed to demonstrate sufficient reasons for why she was unable to engage in discovery anytime before April 2013. Despite Plaintiff's various representations regarding her circumstances, the record reflects that Plaintiff was able to actively engage in this case, as she submitted various filings during the relevant time period. The Magistrate Judge's Opinion and Order is neither clearly erroneous nor contrary to law. Accordingly, Plaintiff's Objections are **OVERRULED** and the Magistrate Judge's Opinion and Order is **ADOPTED**.

## C.  Motions to Amend

On June 3, 2013, Plaintiff filed her Motion to Plead Special Matters. (ECF No. 101.) Two days later, the Court issued an Order instructing Plaintiff that if she wished to amend the Amended Complaint she needed to file a motion expressly meeting the standards of Federal Rule

7

of Civil Procedure 15 and 16. Plaintiff filed a revised Motion to Plead Special Matters on July 5, 2013. Plaintiff seeks to add fraudulent transfer claims against the Sugar Bar and now-dismissed Defendants Corso, Gallicchio, and Swanson. Plaintiff's theory appears to be that these Defendants transferred property in June 2012 in order to deprive Plaintiff of potential damages in this lawsuit.

Pursuant to Federal Rule of Civil Procedure 15, the Court "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[D]enying leave is appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). "Delay alone will ordinarily not justify the denial of leave to amend; however, delay will at some point become undue, placing an unwarranted burden on the court, or prejudicial, placing an unfair burden on the opposing party." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 347 (6th Cir. 2007) (internal quotations omitted).

Furthermore, Rule 16(b)(4) requires a plaintiff to show "good cause" to modify a scheduling deadline. The United States Court of Appeals for the Sixth Circuit has recognized, once a court's amendment deadline passes, "a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Andretti v. Borla Performance*

8

*Indust., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (internal quotations omitted). "A district court should also consider possible prejudice to the party opposing the modification." *Id.*

In this case, even setting aside any potential futility consideration, Plaintiff fails to establish sufficient cause for amendment. First, the record reflects that Plaintiff has delayed in bringing her new claims to the Court's attention. Pursuant to the Court's pretrial schedule order Plaintiff had until September 28, 2012 to file for leave to amend the pleadings. Furthermore, Plaintiff already received one opportunity to amend her pleadings. Although the property transfer in question apparently occurred in the summer of 2012, Plaintiff waited until June 2013 to seek leave to amend. Plaintiff implies within her Motion that she only recently discovered evidence concerning the matter. Nevertheless, as discussed above, Plaintiff chose to significantly delay discovery in this case.

Second, allowing an entirely new set of claims at this stage would burden both Defendants and this Court. Many of the relevant Defendants have already been dismissed from this case. Moreover, discovery and dispositive motion deadlines have passed and this case is set for trial on October 7, 2013. Allowing amendment at this time would either (1) force Defendants to prepare an unfairly expedited defense or (2) force the Court to significantly alter its case schedule, delaying the ultimate resolution of this action.

Based on the circumstances of this case, including both Plaintiff's delay and potential prejudice, leave to amend is not justified. Accordingly, Plaintiff's Motions to Plead Special Matters are **DENIED**.

D.      **Plaintiff's 42 U.S.C. § 1983 Claims**

The Court will next consider Plaintiff's remaining federal constitutional claims against

9

the City of Columbus and the Sugar Bar.[3] Although Plaintiff does not explicitly label these claims, they appear to be for excessive force and false arrest pursuant to 42 U.S.C. § 1983.

### 1. The City of Columbus

Plaintiff brings claims against the City of Columbus based on the conduct of the City's police officers. The City of Columbus maintains that Plaintiff fails to satisfy the requirements for § 1983 municipality liability.

The United States Court of Appeals for the Sixth Circuit has recently provided the following guidance as to when a municipality is liable for constitutional violations pursuant to § 1983:

> The Supreme Court has approved municipal liability based on § 1983 when "the [municipal] action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where such actions emanate from informal governmental custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In other words, the constitutional violation must have sprung from "official policy" in one form or another. *Id.* at 694, 98 S.Ct. 2018. As such, local government units cannot be held liable mechanically for their employees' actions under a *respondeat superior* theory. *Id.* at 691, 98 S.Ct. 2018. The plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). He "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

*Alman v. Reed*, 703 F.3d 887, 903–04 (6th Cir. 2013). "A custom for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *McCoy v. Board of Educ., Columbus City Schs.*, No. 12–3040, 2013 WL 538953, at *5 (6th Cir. 2013).

---

[3] The Court has already dismissed any such claims against Defendant Wycuff.

10

A plaintiff may also establish municipal liability based on a failure-to-train theory. *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 794 (6th Cir. 2012). Such liability arises when a city's failure to train employees "amount[s] to 'deliberate indifference' to the rights of members of the public." *Id.* A plaintiff must demonstrate: " (1) that [the employee's] training was inadequate to prepare him for the tasks he was expected to perform; (2) that the inadequacy persisted due to the City's deliberate indifference; and (3) that the inadequacy is closely related to or actually caused [the relevant] injuries." *Id.*

Here, the City of Columbus is entitled to summary judgment as to Plaintiff's § 1983 claims. Even assuming that the officers violated Plaintiff's constitutional rights, a reasonable jury could not link any such violation to a policy or custom of the City of Columbus. The City submits the Columbus Police Division Directive ("Directives"), relating to the arrest and transport of prisoners, that was effective at the time of the incident.[4] (City's Summ J. Mot. Ex. C, ECF No. 98-4.) The Directive expressly prohibits arrests except upon probable cause. (*Id.* at 1.) The Directive acknowledges that at times it may be necessary for an officer to use leg restraints on a person. (*Id.* at 7.) At the same time, the Directive forbids restraining people in a manner "which prevents straightening the abdomen" and also expressly prohibited "[t]he method of restraint commonly known as 'hog-tying' . . . ." (*Id.*) Considering this Directive, as well as the lack of any significant contrary evidence of a custom or policy, there is simply no reasonable basis to infer that any potential violation in this case was the result of the City's policy or custom.

---

[4] The relevant Directive was effective May 15, 1999 and revised April 15, 2010. Plaintiff makes much of the fact that the Directive was revised the day before the incident in question. Although the timing is admittedly coincidental, without more, any attempt to link the revision date with the events of this case is overly speculative.

11

The information Plaintiff provides only a speculative connection between the City and the events of this case. For example, in an attempt to demonstrate the City's culpability, Plaintiff references a 1994 hog-tying incident involving the City of Columbus and a third party. Plaintiff also stresses a previous encounter she had with City police officers in 1995. Absent further evidence, however, two isolated fifteen year old incidents are insufficient to create a question for the jury. *Cf. Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 536 (6th Cir. 2012) (explaining that a plaintiff can demonstrate custom by establishing "a *clear and persistent* pattern" of violations) (emphasis added). Additionally, Plaintiff emphasizes that the City did not discipline the officers involved in her arrest. Nevertheless, Plaintiff's own briefing and filings reflect that the failure to discipline was due to inconsistent accounts of the events, rather than any implicit encouragement of unconstitutional conduct. Again, without further evidence, a reasonable jury could not infer a policy or custom on the part of the City of Columbus.

Moreover, the evidence does not support a failure-to-train theory. Plaintiff offers only cursory analysis concerning this issue. She appears to maintain that because the alleged incidents occurred, the City of Columbus must have inadequately trained its police officers. The Court finds this line of argument insufficient to create a genuine factual dispute. The record fails to provide any evidentiary basis for concluding that the City of Columbus was deliberately indifferent in training its police officers.

### 2. The Sugar Bar

The Sugar Bar also moves for summary judgment as to Plaintiff's federal claims. The Sugar Bar asserts that, to the extent Plaintiff attempts to bring § 1983 claims against it, it is not a state actor.

12

In considering the state action requirement of a § 1983 claim, Sixth Circuit authority explains:

> To hold a private party liable under § 1983, a plaintiff must prove that the actor "deprived him of a guaranteed right under color of [state law], and ... that [his] actions were properly attributable to the state, i.e. that [he] qualified as a state actor." *Kelm v. Hyatt*, 44 F.3d 415, 421 (6th Cir. 1995) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)). The Sixth Circuit uses three tests to determine whether a private party's actions are "fairly attributable" to the state: the public-function test, the state-compulsion test, and the symbiotic-relationship or nexus test. *Revis v. Meldrum*, 489 F.3d 273, 289 (6th Cir. 2007) (citing *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000)). The public-function test "requires that the private entity exercise powers which are traditionally exclusively reserved to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992). The state-compulsion test requires "proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly to take a particular action so that the choice is really that of the state." *Amer. Postal Workers Union, Local 96 v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). The nexus test "requires a sufficiently close relationship between the state and the private actor so that the action taken may be attributed to the state." *Ibid.*

*Dubuc v. Green Oak Tp.*, 482 F. App'x 128, 132 (6th Cir. 2012). Importantly, "mere cooperation [] does not rise to the level of merger required for a finding of state action." *Lansing v. City of Memphis*, 202 F.3d 821, 831 (6th Cir. 2000).

Like the City of Columbus, the Sugar Bar is entitled to summary judgment as to Plaintiff's § 1983 claims. Given the evidence before the Court a reasonable jury could not conclude that the Sugar Bar is a state actor.[5] The evidence reflects that an employee of the Sugar Bar, Defendant Wycuff, signaled to police when Plaintiff was attempting to prevent people from leaving the establishment. Such action is not enough to render the Sugar Bar a state actor. *Cf. Boykin v. Van Buren Tp.*, 479 F.3d 444, 452 (6th Cir. 2007) (indicating that private security

---

[5] Plaintiff's state-action contentions appear to fall within the nexus test. Nevertheless, regardless of which of the three state action tests is applied, Plaintiff fails to establish a genuine issue of fact.

13

guards, who merely called police regarding a suspected shoplifter, were not state actors for purposes of § 1983). Moreover, there is no evidence indicating that the Sugar Bar in any way controlled, directed, or otherwise influenced how the police officers handled the situation. Ultimately, Plaintiff's mere speculation as to the Sugar Bar's connection with the City, and its police department, is insufficient to create a genuine issue of material fact.[6]

### E.  Supplemental Jurisdiction

In light of the above determinations, only state law claims remain against the active Defendants. Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over claims when it "has dismissed all claims over which it has original jurisdiction." "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the values of judicial economy, convenience, fairness, and comity." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (internal quotations omitted). The Sixth Circuit has further held that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ." *Id.* at 952.

In this case, the Court has original jurisdiction over this action because Plaintiff's pleadings brought causes of action under federal law. Nevertheless, the Court does not have independent diversity jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1332 because it lacks complete diversity. Specifically, Plaintiff is a citizen of Ohio and, at the very

---

[6] Plaintiff alludes to some form of conspiratorial relationship between the Mayor of the City of Columbus and the Sugar Bar. She, however, fails to provide evidence to support her allegations.

14

least, one Defendant is also a citizen of Ohio.[7] *Sharwwell v. Selva*, 4 F. App'x 226, 227 (6th Cir. 2001) (holding that district court properly declined to exercise supplemental jurisdiction over state law claims because "[s]ome defendants were citizens of Ohio as were the plaintiffs"). Here, considering the various interest involved, the Court finds no reason to deviate from the general practice of declining supplemental jurisdiction over remaining state law claims.

## IV. CONCLUSION

For the foregoing reasons:

- The Court **DENIES** Plaintiff's Motion for Reconsideration of the Court's April 19, 2013 Opinion and Order. (ECF No. 83.)

- The Court **OVERRULES** Plaintiff's Objections to the Magistrate Judge's May 16, 2013 Opinion and Order regarding discovery. (ECF Nos. 94, 96.)

- The Court **DENIES** Plaintiff's Motions to Plead Special Matters. (ECF Nos. 101, 112.)

- The Court **GRANTS** Defendants' Motions for Summary Judgment with regard to Plaintiff's remaining federal 42 U.S.C. § 1983 claims. (ECF Nos. 98–100).

- The Court **DECLINES** to exercise supplemental jurisdiction over the remaining state law claims and **DISMISSES** such claims without prejudice.

The Clerk is **DIRECTED** to remove this action from the Court's active case list.

**IT IS SO ORDERED.**

_8-5-2013_
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[7] The record suggest that Defendants Wycuff and the Sugar Bar are both Ohio citizens. At a minimum, however, the City of Columbus is an Ohio citizen. *See Illinois v. City of Milwaukee, Wis.*, 406 U.S. 91, 97 (1972) ("It is well settled that for the purposes of diversity of citizenship, political subdivisions are citizens of their respective States.").

15